**E-FILED**
Tuesday, 14 August, 2007  12:28:30 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 06-CV-2103 |
| ) | |
| CSX TRANSPORTATION, INC. and LINDA L. HART, Administrator of the Estate of Roger Hart, Deceased, ) ) ) | |
| ) | |
| Defendants. ) | |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#25) filed by Plaintiff, St. Paul Fire & Marine Insurance Company (St. Paul) and the Cross Motion for Summary Judgment (#29) filed by Defendant CSX Transportation, Inc. (CSX). Following this court's careful consideration of the arguments of the parties and the documents provided by the parties, this court agrees with St. Paul that the insurance policy it issued to CSX does not provide coverage for the claims included in the underlying lawsuit. Accordingly, St. Paul's Motion for Summary Judgment (#25) is GRANTED and CSX's Cross Motion for Summary Judgment (#29) is DENIED. St. Paul's Request for Oral Argument (#27) is DENIED as moot.

FACTS[1]

On October 10, 2003, Roger Hart was killed when the backhoe he was operating was involved in a collision with a train operated by CSX. The collision occurred at an intersection between CSX's railroad tracks and county road 1125E in Cumberland County, Illinois. On

---

[1] The facts recited are taken from the parties' statements of undisputed facts and the documents submitted by the parties, including the deposition transcript of Douglas E. Kieffer. This court has only included facts which are supported in the record.

September 20, 2005, Linda L. Hart, Administrator of the Estate of Roger Hart, Deceased, filed a wrongful death lawsuit in the circuit court of Edgar County, Illinois (Hart lawsuit).  CSX, Nicholas Garwood, and Larry F. Claburn were named as Defendants in the lawsuit.  Garwood and Claburn served as Engineer and conductor, respectively, on the CSX train which struck the backhoe driven by Roger Hart.  The Hart lawsuit alleged that CSX was operating and maintaining a railroad line in Cumberland County, Illinois.  The Hart lawsuit further alleged that the tracks of the railroad line proceeded in an easterly and westerly direction and intersected at County Road 1125 East at the CSX Railroad Crossing, which was a grade crossing extensively used by the public.  The Hart lawsuit alleged that CSX was negligent in the operation of its train which resulted in the collision.  Specifically, the Hart lawsuit alleged that CSX committed the following negligent acts and omissions:

> A.  Operated the train at a dangerous, high and unsafe speed.
>
> B.  Failed to blow any whistle, or ring any bell, or otherwise warn the traveling public of the train's approach.
>
> C.  Failed to maintain a watchman at the crossing, or to provide any bell, gates, lights, or other means of forewarning the traveling public of the train's approach.
>
> D.  Failed to provide any means of warning persons of the train's approach other than a stationary railroad sign that was not adequate, sufficient, and reasonable protection to the public at the crossing.
>
> E.  Failed to exercise reasonable care in getting adequate and timely warning of the train's approach under the existing conditions.

      F.  Failed to keep a proper lookout for persons or vehicles on the

      railroad crossing.

The Hart lawsuit sought judgment against CSX, Garwood and Claburn for a sum that would "adequately and fairly compensate" Roger Hart's family for their loss.

At the time of the collision with the train on October 10, 2003, Roger Hart was working for Kieffer Brothers Construction Company (Kieffer).  On April 22, 2003, Kieffer had entered into an agreement with E.J. Water Corporation for the construction of the Phase VI Water Distribution System.  Essentially, Kieffer agreed to lay a water pipeline for the distribution of water.  In return for commencing and completing the construction of the Phase VI Water Distribution System, E.J. Water Corporation agreed to pay Kieffer the sum of $1,565,883.89.  E.J. Water Corporation had previously entered into a licensing agreement with CSX which required CSX to permit E.J. Water to "construct, maintain, repair, renew, operate, use, alter or change" the water pipeline under or across railroad tracks at a location referred to as the "Crossing" near Jewett in Cumberland County, Illinois.  In return, CSX received a one-time nonrefundable payment of $1,900.00.  A diagram submitted as an exhibit with this licensing agreement shows that the location of the water pipeline under the railroad tracks was parallel to county road 1125E.

St. Paul issued a Railroad Protective Liability Policy insuring CSX against liability for bodily injuries arising out of acts or omissions at the Job Location which were related to or in connection with the "work" involved in the project.  The total premium paid for the policy was $2,500.00.  The policy listed CSX as the named insured and listed Kieffer as the designated contractor.  The Declarations page of the policy described the "Job Location" as "Jewett, Cumberland County, IL." The Declarations page of the policy also stated that the "Description of Work" was:

3

Phase VI Water Distribution System
84 ft of 12" casing under tracks

The policy further stated, in pertinent part:

SECTION I - COVERAGES

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE

LIABILITY

1.  Insuring Agreement.

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend that insured against any "suit"seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury or "property damage" to which this insurance does not apply.  We may at our discretion investigate any occurrence and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

4

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGE A.

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" occurs during the policy period; and

(2)  The "bodily injury or "property damage" arises out of acts or omissions at the "job location" which are related to or are in connection with the "work" described in the Declarations.

. . .

2.  Exclusions.

This insurance does not apply to:

. . .

C.  Completed Work

"Bodily injury" or "property damage" occurring after the "work" is completed.

The "work" will be deemed completed at the earliest of the following times:

(1)    When all the "work" called for in the "contractor's" contract has been completed.

5

(2)     When all the "work" to be done at the "job location"
        has been completed.

(3)     When that part of the "work" done at the "job
        location" has been put to its intended use by you, the
        governmental authority or other contracting party.

This exclusion does not apply to "bodily injury" or "property
damage" resulting from the existence of or removal of tools,
uninstalled equipment or abandoned or unused materials.

Douglas E. Kieffer testified at his deposition that he worked as a job superintendent for Kieffer. He testified that Kieffer was performing a rural water job for EJ Water which was "spread out over a very large area," which he later stated was approximately 68 miles. He testified that the work Kieffer did at the CSX tracks was "slightly off to the side" of the crossing across county road 1125E. Douglas Kieffer testified that CSX required Kieffer to purchase the railroad protective liability policy as a condition for allowing Kieffer to do work in the railroad right-of-way. Douglas Kieffer stated that the cost of the pipeline installed at the CSX property was approximately $8,400.00.

Douglas Kieffer testified that asphalt cold patch was placed near the CSX tracks so that Kieffer could use it for the work at the railroad tracks, for work near Route 40 and for work at Interstate 70. He stated that, at all three of those locations, the installation of the water pipe required Kieffer to bore a hole and put pipe underneath. He testified that they put a casing pipe in and then slid a smaller pipe inside of it that actually carried the water. The asphalt cold patch was used to seal the pipes "to keep dirt from going in between the water pipe and the casing." Douglas Kieffer

testified that the asphalt cold patch was placed near the location of the work at the railroad tracks "with the intention that it would be used at locations other than for the bore under the railroad tracks." He testified that it was put in one spot to keep it in a central location, and they would "just take the backhoe and scoop it up and take it to the other bores." Douglas Kieffer testified that the work at the CSX tracks was completed on August 12, 2003. Douglas Kieffer testified that, on October 10, 2003, Roger Hart went to pick up asphalt cold patch to be used at the I-70 work site, which was approximately 1½ to 3 miles from the location of the work at the CSX tracks. Roger Hart picked up asphalt cold patch with a backhoe and was struck by a train.

## PROCEDURAL HISTORY

On May 23, 2006, St. Paul filed its Complaint (#1) in this court against CSX and Linda L. Hart, Administrator of the Estate of Roger Hart, Deceased. St. Paul sought a declaration from this court that there is no coverage under the policy issued by St. Paul to CSX with respect to the underlying Hart lawsuit.[2] On June 12, 2006, Linda L. Hart filed her Answer (#6) to the Complaint. On July 13, 2006, CSX filed an Answer and Counterclaim (#13). In its Counterclaim, CSX alleged that, based upon the terms of the policy issued by St. Paul, St. Paul has a duty to defend CSX in the Hart lawsuit. CSX also alleged that St. Paul has a duty to pay those sums which CSX becomes legally obligated to pay as damages, if any, because of the Hart lawsuit, up to the limits of the policy. CSX alleged that St. Paul is liable for breach of contract because it has denied that it has a duty to defend and has refused to defend CSX in the Hart lawsuit and also alleged that it is entitled to a declaratory judgment declaring that St. Paul has a duty under the policy to defend CSX in the

[2] This court's jurisdiction is based upon diversity of citizenship. St. Paul is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. CSX is a railroad company organized under the laws of Virginia and has its principal place of business in Jacksonville, Florida. Linda L. Hart, Administrator of the Estate of Roger Hart, is a citizen and resident of Illinois. It is undisputed that the amount in controversy exceeds $75,000.00.

Hart lawsuit, to pay all damages incurred by CSX as a result of St. Paul's breach of that duty, and to pay all sums (up to the policy's limit), if any, which CSX becomes legally obligated to pay as damages in the Hart lawsuit.

On April 9, 2007, St. Paul filed a Motion for Summary Judgment (#25) with an attached Memorandum of Law and supporting exhibits.  St. Paul also filed a Motion for Oral Argument (#27).  On April 27, 2007, CSX filed its Response to St. Paul's Motion for Summary Judgment and Cross-Motion for Summary Judgment (#29) and Memorandum in Support (#30). On May 11, 2007, St. Paul filed its Reply (#31) in support of its Motion for Summary Judgment.  On May 18, 2007, St. Paul filed a Response to CSX's Cross Motion for Summary Judgment (#33) in which it adopted the arguments included in its Reply.  On May 31, 2007, CSX filed its Reply (#34) in support of its Cross Motion for Summary Judgment, with attached exhibits.  The summary judgment motions are therefore fully briefed and ready for ruling.

ANALYSIS

I.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Summary judgment is not warranted when there are genuine issues of material fact with respect to the interpretation of a

8

contract.  Cherry v. Auburn Gear, Inc., 441 F.3d 476, 481 (7th Cir. 2006).  However, the interpretation of an unambiguous contract is a question of law, and therefore a dispute over the terms of an unambiguous contract is suited to disposition on summary judgment.  Utility Audit, Inc. v. Horace Mann Serv. Corp., 383 F.3d 683, 687 (7th Cir. 2004).  Under Illinois law, which the parties agree applies to this case, the construction of an insurance policy and a determination of the rights and obligations under the policy are questions of law which are appropriate for resolution by summary judgment.  Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1077 (Ill. 1993); Hartford Fire Ins. Co. v. Everest Indem. Ins. Co., 861 N.E.2d 306, 320 (Ill. App. Ct. 2006), app. denied, 865 N.E.2d 968 (Ill. 2007); see also Cincinnati Ins. Co. v. Allen, 347 F. Supp. 2d 586, 590 (C.D. Ill. 2004).

## II.  ST. PAUL'S MOTION FOR SUMMARY JUDGMENT

St. Paul argues that it is entitled to summary judgment on its Complaint requesting a declaratory judgment as it is entitled to a finding and declaration that the policy issued to CSX does not provide coverage to CSX for the underlying Hart lawsuit.  St. Paul argues that the policy only covered claims for bodily injury which are related to or in connection with the water pipe installation on CSX property and also argues that, alternatively, the completed work exclusion applies to exclude any claim for bodily injury sustained by Roger Hart.  This court agrees with St. Paul that the policy in question does not provide coverage for the underlying Hart lawsuit.

Under Illinois law, it is well settled that an "insurer's duty to defend its insured is much broader than its duty to indemnify."  Outboard Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E.2d 1204, 1220 (Ill. 1992); see also Hartford Fire Ins. Co., 861 N.E.2d at 310.  To "determine whether an insurer has a duty to defend its insured, 'the court must look to the allegations in the underlying

9

complaint and compare these allegations to the relevant coverage provisions of the insurance policy.'" <u>Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.</u>, 435 F.3d 729, 732 (7th Cir. 2006), <u>quoting</u> <u>Crum & Forster</u>, 620 N.E.2d at 1079.  If the facts alleged in the underlying complaint fall within, or even potentially within, the coverage provisions of the policy, the insurer must defend the insured. <u>Native Am. Arts, Inc.</u>, 435 F.3d at 732.  In assessing whether this duty exists, a court must construe the allegations in the underlying complaint liberally and any doubt in coverage must be resolved in favor of the insured.  <u>Native Am. Arts, Inc.</u>, 435 F.3d at 732.  "Nonetheless, deference only goes so far; if the policy terms are unambiguous, the court must apply their plain and ordinary meaning." <u>Native Am. Arts, Inc.</u>, 435 F.3d at 732, <u>citing</u> <u>Crum & Forster</u>, 620 N.E.2d at 1078.  Therefore, an "insurer has no duty to defend where it is 'clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" <u>Native Am. Arts, Inc.</u>, 435 F.3d at 734, <u>quoting</u> <u>U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.</u>, 578 N.E.2d 926, 930 (Ill. 1991).

In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement.  <u>Crum & Forster</u>, 620 N.E.2d at 1978.  "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."  <u>Crum & Forster</u>, 620 N.E.2d at 1078; <u>see also</u> <u>Liberty Mut. Ins. Co. v. Am. Home Assurance Co.</u>, 858 N.E.2d 530, 536-37 (Ill. App. Ct. 2006).  If the words used in the policy are plain and unambiguous, the court will afford them their plain and ordinary meaning and will apply them as written.  <u>Crum & Forster</u>, 620 N.E.2d at 1078; <u>see also</u>

10

Sokol & Co. v. Atl. Mut. Ins. Co., 430 F.3d 417, 420 (7th Cir. 2005).  In this case, both St. Paul and CSX have argued that the language of the insurance policy is unambiguous and should be interpreted according to its plain language.

St. Paul first argues that the policy it issued to CSX does not provide coverage for the underlying Hart lawsuit because the allegations described in the complaint do not arise out of acts or omissions that were related to or in connection with the "work" as defined by the policy.  St. Paul contends that Roger Hart was not working on the 84 feet of pipe which was installed under CSX's tracks, which was what the insurance policy was purchased to cover.  St. Paul notes that the undisputed facts show that the work at the CSX railroad tracks had long since been completed at the time of the train collision.  St. Paul argues that the uncontroverted evidence shows that Roger Hart was working on another section of the job and his use of the public at-grade crossing was like that of any other member of the public.

A railroad protective liability policy provides coverage for injuries arising out of acts or omissions of either the insured or the designated contractor.  See Consol. Rail Corp. v. Hartford Accident & Indem. Co., 676 F. Supp. 82, 85 (E.D. Pa. 1987); Southern Ry. Co. v. Fid. & Cas. Co. of N.Y., 455 F. Supp. 9, 12 (D.S.C. 1977), aff'd, 580 F.2d 1049 (4th Cir. 1978).  This type of policy applies to liability for bodily injury which is related to or in connection with the "work" described in the Declarations.  Steadfast Ins. Co. v. Liberty Mut. Ins. Co., 2000 WL 288382, at *1 (E.D. Pa. 2000).  In Southern Ry. Co., the contractor was engaged in the construction of an interstate highway which crossed Southern Railway Company's railroad tracks at various points.  The contractor therefore made an agreement with Southern for temporary right of way across Southern's tracks.  This agreement set out the duties of each party regarding the crossing at the railroad tracks and

11

required the contractor to purchase the insurance policy at issue.  Southern Ry. Co., 455 F. Supp. at 10.  One Sunday, some young boys managed to start a bulldozer at the construction project, drove it onto the railroad tracks and left it there.  Later that day, a train approached the crossing and did not see the bulldozer on the tracks in time to stop the train.  A collision ensued which caused a massive derailment and personal injuries to the engineer and brakeman.  Southern Ry. Co., 455 F. Supp. at 10.  Southern sought coverage under the railroad protective liability policy for the damage to its train and for the amounts paid to the injured Southern employees.  Southern Ry. Co., 455 F. Supp. at 10.

The court concluded that the language of the policy limiting coverage to losses "arising out of acts or omissions at the designated job site which are related to or are in connection with the work described in Item 4 of the declarations . . ." was "clear and unambiguous" and could be interpreted by the court as a matter of law.  Southern Ry. Co., 455 F. Supp. at 11.  The court determined that the "omission" involved in the case, the failure to protect the heavy machinery involved in the construction project from theft, "was not related to or connected with the construction or use of the temporary crossing" at the railroad tracks.  Southern Ry. Co., 455 F. Supp. at 11.  The court noted that the omission may have been related to the construction of the interstate, "but leaving the bulldozer unprotected had nothing to do with the temporary crossing."  Southern Ry. Co., 455 F. Supp. at 11.  The court stated:

> The policy term, limiting coverage to omissions "related to or connected with" the work at or on the crossing, clearly refers to a situation where the crossing is being used.  This is evident in the low premium for the coverage and from the agreement between Southern

and [the contractor] for use of the crossing.

 Southern Ry. Co., 455 F. Supp. at 11.  The court concluded that, because Southern "failed to prove

any loss arising from an occurrence covered by defendant's policy," the insurance company was

entitled to judgment in its favor.  Southern Ry. Co., 455 F. Supp. at 12; see also Continental Cas.

Co. v. Auto-Owners Ins. Co., 238 F.3d 941, 944 (8th Cir. 2000) (coverage under a railroad protective

policy requires a nexus between the injury and the work described in the Declarations).

        St. Paul argues that Southern Ry. Co. is analogous to this case.  St. Paul contends that

obtaining asphalt cold patch for the water pipe installation at I-70 had no connection to the

installation of water pipe under the CSX railroad tracks.  St. Paul also argues that the decision in

Continental Cas. Co. reinforces the proposition that a court should only find coverage under a

railroad protective liability policy where the party seeking coverage has established some showing

that the injury underlying the matter arose out of, or is in some way connected with, the work for

which the insurance was procured.  St. Paul argues that, in this case, the work described in the policy

related specifically to the installation of pipeline underneath railroad tracks and Roger Hart's

activities on the day of the train collision were entirely unrelated to the pipeline installation work

at the CSX tracks covered under the St. Paul policy.

        In response, CSX notes that the policy includes a definition of "work" which states "'[w]ork'

means work or operations performed by the 'contractor' including materials, parts or equipment

furnished in connection with the work or operations."  CSX contends that there is coverage under

the policy issued by St. Paul because the Hart lawsuit arises out of acts which occurred at the job

location.  CSX also argues that the acts Roger Hart was engaged in at the time of the accident were

related to and in connection to the "work" described in the policy because he was removing asphalt

13

cold patch which was a "material" used in the work.  CSX contends that, when Roger Hart was removing what was left of the materials which had been placed there for the project but did not end up being used there, he was engaged in "work" as defined in the policy.  CSX relies on Steadfast Ins. Co. in support of its position.  In that case, the contractor was widening a road which crossed a railroad right-of-way.  A railroad employee injured his back when he stepped into a hole adjacent to a freshly-poured concrete curb constructed by a sub-contractor, apparently as a part of the road widening work.  The court held that the railroad protective liability policy provided coverage for the bodily injury suffered by the railroad employee because "the accident occurred at the job site and arose in connection with the work being performed."  Steadfast Ins. Co., 2000 WL 288382, at *2.

This court concludes that Steadfast Ins. Co. is not similar to this case and does not support CSX's position.  In this case, Roger Hart was picking up asphalt cold patch to use at another location when the accident occurred.  It is essentially undisputed that Roger Hart's actions the day of the collision did not have anything to do with the water pipeline under the railroad tracks. The Declarations page of the policy stated that the "work" was "Phase VI Water Distribution System 84 ft of 12" casing under tracks."  Therefore, based upon the plain and ordinary meaning of the terms used in the policy at issue, this court concludes that the "bodily injury" did not "arise[] out of acts or omissions at the 'job location' which are related to or are in connection with the 'work' described in the Declarations."[3]  The fact that the policy contained a definition of "work" which included the term "materials" does not change this court's conclusion. The asphalt cold patch Roger Hart picked up the day of the collision was not "furnished in connection with the work or operations" described

---

[3]  This court notes that there is a dispute between the parties regarding whether the train collision occurred at the "job location" as defined in the policy.  This court concludes that this is not a genuine issue of material fact because, even assuming that the collision occurred at the "job location" covered under the terms of the policy, the bodily injury did not arise out of acts or omissions related to or in connection with the "work" described in the policy.

14

in the Declarations.  This court concludes that, while none of the case law cited by the parties is directly on point, the cases cited by St. Paul are more instructive regarding the issue before this court and provide support for this court's conclusion that the bodily injury in this case did not arise out of acts or omissions related to or in connection with the "work" described in the policy.  See Continental Cas. Co., 238 F.3d at 944; Southern Ry. Co., 455 F. Supp. at 11.

In this case, this court has carefully considered the allegations of the underlying Hart lawsuit and has compared those allegations to the relevant coverage provisions of the insurance policy.[4] This court has construed the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.  Following this careful review, this court agrees with the parties that the words of the policy are clear and unambiguous and must be afforded their plain and ordinary meaning.  This court concludes that it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.

This court also agrees with St. Paul that the completed work exclusion applies in this case so that the policy does not provide coverage for the underlying Hart lawsuit.  This court recognizes that "[p]rovisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer."  American Nat'l Fire Ins. Co. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa., 796 N.E.2d 1133, 1142 (Ill. App. Ct. 2003), citing American States Ins. Co. v. Koloms, 687 N.E.2d 72, 75 (Ill. 1997).  However, it is undisputed that Douglas Kieffer testified that the work installing the water pipeline under the CSX tracks was completed on August 12, 2003,

---

[4]  The underlying complaint in this case states that Roger Hart was operating a backhoe when the train collision occurred.  However the underlying complaint includes allegations of negligence by CSX at the railroad crossing which related to duties CSX owed to members of the public using the grade crossing and did not relate in any way to the installation of water pipe near the crossing.

approximately two months prior to the collision which occurred on October 10, 2003.  The policy specifically stated that "bodily injury" occurring after the "work" was completed was excluded from the coverage provided by the policy.  There is an exception to this exclusion, which states that this "exclusion does not apply to 'bodily injury' or 'property damage' resulting from the existence of or removal of tools, uninstalled equipment or abandoned or unused materials."  St. Paul argues that this exception is not applicable here because the asphalt cold patch Roger Hart was picking up on the day of the collision was not "abandoned or unused."  St. Paul notes that Douglas Kieffer testified that the asphalt cold patch was placed in that location for use at three job sites.  Douglas Kieffer testified that Roger Hart was picking up the asphalt cold patch to be used at the I-70 work site.  St. Paul notes that, in U.S. Sanitary Specialties Corp. v. Globe Indem. Co., 204 F.2d 774 (7th Cir. 1953), the Seventh Circuit stated that it "seems perfectly clear" that the "abandoned or unused material" exception to the "completed operations" exclusion "refers only to tools, equipment and materials which on completion of an operation should have been removed by the assured from the premises where the operation occurred but which, instead, were abandoned there by the insured and later were instrumental in causing the accident."  U.S. Sanitary Specialties Corp., 204 F.2d at 777; see also Liberty Mut. Ins. Co., 858 N.E.2d at 538.  St. Paul contends that, in this case, the asphalt cold patch was never abandoned, nor did it go unused.  In fact, the asphalt cold patch was being picked up for use at a different location and for a different job than described in the policy issued by St. Paul.

In its response and cross motion for summary judgment, CSX does not dispute that Kieffer finished installing the pipeline at the job location in August 2003.  CSX also does not dispute that the policy "excludes coverage for bodily injury which occurs after the work is completed."  CSX states that this is a reasonable exclusion, and that it has no quarrel with it.  However, CSX argues

16

that, by its terms, the exclusion does not apply to "'bodily injury' . . . resulting from the . . . removal

of . . . unused materials."  CSX states that Douglas Kieffer testified that, as part of finishing and

cleaning up after every job, Kieffer removed any unused materials.  CSX also relies on Douglas

Kieffer's testimony that, although he did not remember for sure, he thought there may have been

asphalt cold patch left after Kieffer finished the water pipe installations at all three locations which

had to be cleaned up.  CSX contends that the exception to the exclusion applies here because Roger

Hart was removing unused materials when he was involved in the train collision.  CSX argues that

"[t]here is no limitation on this exception to the exclusion based upon the passage of time, regardless

of whether such removal takes place one month, two months, or even longer after the insured project

is otherwise completed."  CSX also argues that "unused" materials could encompass materials which

will be used elsewhere, in contrast to "abandoned" materials, which have no further use and will be

discarded.

In this case, there is no dispute that the completed work exclusion is applicable.  The only

dispute is whether the exception to the exclusion applies here.  This court concludes that CSX's

argument that the exception applies does not fit with the undisputed facts in this case.  It is

undisputed that Roger Hart was <u>not</u> cleaning up the asphalt cold patch at the time of the collision.

It is undisputed that the asphalt cold patch was placed there for use at three different locations and

Roger Hart was picking it up for use at the I-70 work location.  This court also notes that CSX had

cited no authority for its rather novel suggestion that "unused" materials means materials which will

be used elsewhere.  This court concludes that this interpretation does not fit with the plain and

ordinary meaning of the term.  This court agrees with the Seventh Circuit's conclusion that it is

"perfectly clear" that the exception for "abandoned or unused" materials "refers only to tools,

17

equipment and materials which on completion of an operation should have been removed . . . but which, instead, were abandoned there by the insured and later were instrumental in causing an accident." U.S. Sanitary Specialties Corp., 204 F.2d at 777.  In this case, the undisputed facts show that the asphalt cold patch was used in the installation of the water pipe at the CSX railroad tracks and was left near that location to be used at two other locations.  This court therefore agrees with St. Paul that the asphalt cold patch was never abandoned, nor did it go unused.  Because the facts here do not fit the exception, this court concludes that the exclusion for completed work applies so that there is no coverage under the policy for that reason as well.

For all of the reasons stated, this court concludes that the insurance coverage afforded by the policy at issue in this case did not extend to the claims in the underlying Hart lawsuit.  Accordingly, St. Paul is entitled to summary judgment.  See Native Am. Arts, Inc., 435 F.3d at 734-35.

### III.  CSX'S CROSS MOTION FOR SUMMARY JUDGMENT

CSX has claimed that it is entitled to summary judgment on St. Paul's Complaint for declaratory judgment and on its Counterclaim seeking damages.  However, because this court has concluded, after careful consideration of the arguments made by both St. Paul and CSX, that St. Paul is entitled to a declaration that the policy does not provide coverage for the underlying Hart lawsuit, CSX's Cross Motion for Summary Judgment must be DENIED.

IT IS THEREFORE ORDERED THAT:

(1) St. Paul's Motion for Summary Judgment (#25) is GRANTED.

(2) CSX's Cross Motion for Summary Judgment (#29) is DENIED.

(3) Judgment is entered in favor of St. Paul and against CSX and Linda L. Hart, Administrator of the Estate of Roger Hart, Deceased.  This court enters a declaratory judgment that

there is no coverage under the St. Paul policy with respect to the underlying Hart lawsuit.

(4)  This case is terminated.  The Final Pretrial Conference scheduled for November 16, 2007, and the jury trial scheduled for November 26, 2007, are hereby VACATED.  The remaining pending Motion (#27) is DENIED as moot.

ENTERED this 14th day of August, 2007.


s/MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE